IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RANDALL R. PREVATT,

    Plaintiff,

v.                                    Case No. 1:14cv145-MW/GRJ

THE CITY OF GAINESVILLE,
FLORIDA, a municipal corporation;
and JEREMIAH KELLY and
DANIEL ABBOTT, in their
individual capacities,

    Defendants.
_____/

## ORDER GRANTING SUMMARY JUDGMENT IN PART

This is an excessive force case. Plaintiff Randall Prevatt sues Defendants, the City of Gainesville and two of its police officers, related to an incident in January 2013. Mr. Prevatt was walking near and towards an elementary school and carrying what turned out to be a pellet gun and two kitchen knives. After receiving multiple calls from concerned persons, the police officers confronted him. Upon command, Mr. Prevatt put down those weapons. But he did not comply with their subsequent commands to raise his hands and get on the ground. Instead he kept walking away. The officers tackled Mr. Prevatt just after he eventually raised his hands, throwing him face-first onto the ground and causing injuries. Mr. Prevatt brings state law battery and negligence claims. He also

1

brings federal claims under 42 U.S.C. § 1983 based on allegedly unconstitutional use of excessive force.

This Court has considered without hearing Defendants' Motion for Summary Final Judgment. ECF No. 20. The police officers are entitled to qualified immunity on the federal claims because it was not clearly established that the officers' use of force was constitutionally excessive. So Defendants' motion for summary judgment is granted in part. The federal claim against the City, on the other hand, has not been adequately briefed. The parties must submit supplemental filings as to that claim before summary judgment may properly be considered.

I

This Court accepts, as it must, the record facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about those facts are also resolved in favor of the Plaintiff. *Id.*

Randall Prevatt lived in Gainesville, Florida. ECF No. 29-1 at 35–37. On January 2, 2013, he was moving from a house rented from his cousin to a nearby campground. *Id.* He was transporting some belongings, including a pellet gun (or "BB gun") and two kitchen knives. *Id.* By the time of the incident around 2:00 p.m., Mr. Prevatt had consumed 12 beers. *Id.* at 39.

At least two people called 911 with concerns about Mr. Prevatt, reporting they saw a man who appeared to be carrying a rifle in the vicinity of Stephen

Foster Elementary School. ECF No. 21-3.[1] One described a "white male . . . carrying a gun" with a "red jacket . . . around his waist," *id.* at Track 2 00:20–33, said the gun looked like an "assault rifle," *id.* at Track 2 00:57, and stated she believed Prevatt was "heading toward . . . Stephen Foster Elementary School," *id.* at Track 2 01:54–02:02. Another person said that she saw a "man . . . with a gun" and stated that she couldn't tell if it was a "[.]22 [caliber rifle] or a BB gun," *id.* at Track 3 00:22–28, but stated that the individual was not threatening anyone at that time. *Id.* at Track 3 00:32. Defendants, Officers Jeremiah Kelly and Daniel Abbott, were the first to arrive on scene in response to these calls. ECF No. 29-2, at 15–16.

The encounter between Mr. Prevatt and the officers was recorded by a security camera at a nearby car wash. ECF No. 21-4. The entire incident lasted little more than 15 seconds. *Id.* at 07:30-45. The officers pulled up and exited their car, weapons drawn, as they called to Mr. Prevatt from behind. *Id*. at 07:30–35. Officer Kelly first told Mr. Prevatt to drop the gun. ECF No. 29-2, at 18.

---

[1] As urged by Defendants, this Court takes judicial notice under Federal Rule of Evidence 201, the date of the incident was less than three weeks after the nationally publicized shootings at Sandy Hook Elementary School in Newtown, Connecticut. *See, e.g.,* Margery Eagan, *All we can do now is pray for these souls*, 2012 WLNR 27198673 (Boston Herald Dec. 17, 2012). Defendants concede, however, that school was not in session that day because local schools were still on winter break. ECF No. 20 at 3.



Mr. Prevatt slowed, turned, and tossed the gun to the ground. ECF No. 21-4, at 07:35–38. Officer Kelly then said to drop the knives. ECF No. 29-2, at 18. Mr. Prevatt dropped the knives. ECF No. 21-4, at 07:35–38.



The officers then gave Mr. Prevatt at least one more command. Mr. Prevatt says that they ordered him to put his hands in the air and get on the ground. ECF No. 29-1, at 56, 71, & 73. Neither officer recalled ordering Mr. Prevatt to put his hands in the air, but both agreed that they told Mr. Prevatt to get on the ground. ECF Nos. 29-2, at 19; 29-3, at 19. The view of the evidence most favorable to Mr.

4

Prevatt is that the officers did tell him to raise his hands. This Court adopts that view for purposes of ruling on this motion. Initially, Mr. Prevatt did not get on the ground or raise his hands. Rather, he turned again and continued walking away from the officers. ECF No. 24-4 at 07:39.



The officers responded by rapidly closing on Mr. Prevatt. *Id.* at 7:40. He slowed and put his arms up, but by that time the officers were already approaching him at full speed. *Id.* at 07:41–42.



They tackled Mr. Prevatt, throwing him forcefully to the ground just after he had raised his hands. *Id.* at 07:43.



They proceeded to handcuff Mr. Prevatt, and were then joined by two more officers. *Id.* at 07:44-46.

Mr. Prevatt maintains that he was attempting to get to the ground as he was ordered to by the officers, but was slow in doing so because of his bad right leg, and was thrown to the ground before he had time to comply. ECF No. 29-1, at 54. He suffered significant injuries as a result of the take-down and handcuffing. *Id.* at 59–62.

Mr. Prevatt sues the City and the two police officers, alleging battery against the officers under state law (Counts I and II), excessive force against the officers under the Fourth Amendment and § 1983 (Counts III and IV), negligent supervision against the City under state law (Count V), and excessive force against the City under § 1983 (Count VI).

II

Officers Kelly and Abbott move for summary judgment on the § 1983 claims against them, arguing that they did not commit any constitutional violation, and even if they did, they are entitled to qualified immunity. This Court declines

6

to decide whether an actual constitutional violation occurred, but finds that the officers are entitled to qualified immunity.

A

An officer's use of force is excessive under the Fourth Amendment if it is "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (quoting *Graham v. Connor,* 490 U.S. 386, 394 (1989)). To determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citations and quotations omitted). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. In deciding whether the use of force was reasonable, courts must consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. In other words, the force used by a police officer must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight. *Lee*, 284 F.3d at 1198. Although the extent of any injury may be relevant, the core judicial inquiry in a

Fourth Amendment excessive-force case is the nature of the force. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010)).

Additionally, the affirmative defense of qualified immunity is a shield against liability for government actors, prohibiting civil damages for torts committed while performing official duties unless their conduct violates a clearly established statutory or constitutional right. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (U.S. 2011). Qualified immunity thus "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft,* 131 S. Ct. at 2085 (quotation omitted). It is an immunity from suit, not just a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To receive qualified immunity, the defendant public official must prove as a threshold matter that he or she was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Courson v. McMillan,* 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir. 1988)). Here, both sides agree that the officers were acting within the scope of their discretionary authority.

With this established, the burden shifts to the plaintiff. *Id.* A plaintiff must show (a) a violation of a constitutional right; and (b) that the right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] Courts have discretion to decide which of these "should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the second prong, a defendant "can be held liable only if the law so clearly established the wrongfulness of his conduct that any reasonable official in his place would have understood that he was violating the plaintiff's constitutional rights." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015). While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083. The Supreme Court has repeatedly said "not to define clearly established law at a high level of generality . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."

---

[2] The decisions of the Supreme Court of the United States and the United States Court of Appeals for the Eleventh Circuit can clearly establish the law in this circuit. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). Clearly established law in this circuit may also include "court decisions of the highest state court in the states that comprise this circuit as to those respective states, when the state supreme court has addressed a federal constitutional issue that has not been addressed by the United States Supreme Court or the Eleventh Circuit." *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir. 1991).

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (U.S. 2014) (quotation and citation omitted).

B

Applying these principles to the case at hand, this Court finds that there are no genuine disputes of material fact and that the officers' use of force did not amount to a violation of Mr. Prevatt's clearly established rights. The officers are therefore entitled to qualified immunity on the § 1983 claims against them.

As a starting point, all three of the *Graham* factors, taken from the perspective of a reasonable officer on the scene and possessing the information available to Officers Kelly and Abbott, cut against a finding that a clearly established constitutional violation occurred.

First, the suspected crime—though not accomplished at that point—may have appeared to a reasonable officer in the circumstances to be severe. Two persons independently called the police to report the unusual activity of a man carrying what appeared to be an "assault rifle" or a "[.]22," within two blocks of an elementary school. Although the gun was in fact merely a BB gun, it looked from a distance like a real, deadly, rifle. The police are not required to assume the least dangerous possibility is the actual state of things. These are the weapons which Mr. Prevatt carried:



ECF No. 21-5 at DSCN0354.jpg. *Accord* ECF No. 29-2 at 14 ("It appeared to be a rifle. I couldn't say exactly what type of rifle, but it looked real enough to me. It looked metal. It didn't look fake. It didn't have any markings of a typical fake gun, so I treated it as a real rifle."). The officers were specifically alerted that Mr. Prevatt was near an elementary school. ECF No. 29-2 at 11. Moreover, the incident occurred just weeks after the tragic mass shooting at Sandy Hook Elementary School.[3] A reasonable officer could have feared the worst—perhaps some sort of attempted copycat—when Mr. Prevatt responded unusually and erratically to their commands. Rather than immediately stop and acknowledge the officers' blaring lights and commands, Mr. Prevatt kept walking forward for several seconds. He then turned briefly to drop his gun, as well as the two knives that had not been reported on the calls, and then *turned back around and kept*

---

[3] Although Defendants concede that school was not in session due to winter break, there does not appear to be any evidence that either officer knew that school was not in session that day, which was a Wednesday. Fed. R. Evid. 201.

11

*walking*.  This unusual behavior by a man seemingly armed to the teeth walking near an elementary school in the wake of the Sandy Hook massacre could cause a reasonable officer to believe that the situation was severe enough to merit the use of *non-deadly* force to subdue a noncompliant suspect.

Second, the officers had some reason to believe that Mr. Prevatt still posed an immediate threat.  In addition to the gun, Mr. Prevatt was carrying two knives—a fact not reported by the 911 callers.  Officer Abbott described Mr. Prevatt as holding the knives "kind of like Wolverine . . . [t]he knives were sticking out in between his fingers."[4]  ECF No. 29-3 at 15.  Additionally, Mr. Prevatt was wearing a red jacket tied around his waist.  Given that Mr. Prevatt was erratically responding to the officers' commands, that he possessed at least three weapons, and that a portion of his body was concealed, it would be understandable for the

---

[4] "Wolverine" appears to refer to the character in the X-Men comic book series by Marvel who has been portrayed in major motion pictures by actor Hugh Jackman:



*Fanpop*, http://images4.fanpop.com/image/photos/19100000/Wolverine-x-men-the-movie-19125700-1600-1200.jpg.  Of course Mr. Prevatt only had two knives.  And there is no suggestion that he threatened the officers with the knives.

officers to suspect that he could have been carrying additional weapons and thus posed an immediate threat to their safety.

Third, the officers had some reason to believe that Mr. Prevatt was resisting their attempt to seize him. After the officers told him to either put his hands up and get on the ground, Mr. Prevatt did neither or otherwise indicate that was attempting to comply with their commands. Instead, he turned around and began walking away from the officers. Mr. Prevatt claims that despite his intent to do so he could not immediately comply with the commands because of his arthritic knee. But the facts must be viewed from the officers' perspective. There is no evidence that Mr. Prevatt communicated his infirmity to the officers or that they otherwise knew that he had a bad knee. In any event, he did not show any intentions or attempts to comply with their commands until it was too late.[5] Instead, Mr. Prevatt's actions in walking away from the officers indicated intentional noncompliance.

Mr. Prevatt argues that the amount of force used was unreasonable because he complied with the officers' commands to put down the weapons and raised his hands in submission to the officers' authority. It is true that the gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.

---

[5] Perhaps Prevatt might have been able to more accurately communicate his intentions had he not consumed 12 beers that morning. ECF 29-1 at 39. *Accord id.* at 53 ("Q: Would you describe yourself as under the influence of alcohol at this time this [incident] occurred? . . . A. Yes, sir, I was.").

13

*Hadley*, 526 F.3d at 1330. But this is not an accurate characterization of the undisputed evidence of this case, even when taken in the light most favorable to the plaintiff.

The video of the incident clearly shows that after Mr. Prevatt put down his weapons, he turned and walked away from the officers rather than submit to the officers' commands to get on the ground. *Accord* ECF 29-2 at 19 ("[O]nce he dropped [the weapons], he just kind of turned away from us and started walking away."). After the officers reasonably perceived Mr. Prevatt's about-face to evidence his intent not to comply with the officers' commands,[6] they began charging at him to tackle him. By the time Mr. Prevatt, still moving away from the officers, began to raise his hands into the air, the officers were already in the process of tackling him.

Mr. Prevatt is correct that only three or four seconds passed between the time that he laid down his weapons and the time he was tackled. It is true that arrestees must ordinarily be given a reasonable amount of "time to obey" an

---

[6] *Accord* ECF No. 29-3 at 33 ("I know he wasn't complying with our commands."); ECF 29-2 at 30:

> Q: Did you think Mr. Prevatt was trying to get away or escape?
> A: Yes.
> Q: And that would be because he turned away?
> A: Yeah. I mean, he -- it certainly wasn't normal behavior, in my training and experience. He was showing noncompliance by refusing to get on the ground, so it immediately escalated the noncompliance in my mind.").

officers' commands, *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005), and that "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils*, 647 F.3d at 1289. But neither point applies here.

Mr. Prevatt was behaving oddly, possessed multiple weapons, and failed to comply with—or, rather, affirmatively defied—the officers' commands. In turning around and walking away from the shouting officers, he "disobeyed instructions." *Id.* By the time he seemingly changed his mind and tried to raise his arms in compliance, the officers were already in the process of using non-deadly force to bring him to the ground.

Nor did any clearly established law indicate that this amount of force was constitutionally excessive. In important ways, the cases on which Mr. Prevatt relies are different from this case. In *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000), the court found a constitutional violation where an officer unleashed an attack dog on a suspect who was already on the ground in submission. *Id.* at 927. In *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), the court found a constitutional violation where the officers used force to subdue a suspect who had suddenly become docile and submitted. *Id.* at 1419. In *Hadley*, the court found a constitutional violation when an officer punched a handcuffed, non-resisting arrestee in the stomach. 526 F.3d at 1330. And in *Lee* the court

15

found a constitutional violation where an officer slammed a handcuffed arrestee into the hood of a car. 284 F.3d 1198. Unlike the plaintiffs in these cases, Mr. Prevatt did not attempt to submit to authority until about a second before the officers made contact. By that point they had little chance to avert their course of action. A failure to subdue Mr. Prevatt once at that close range might have presented additional danger, say if he had another knife concealed on his person.

Mr. Prevatt also relies on two non-binding decisions as persuasive authority. In *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002), officers took down a "passive" individual with enough force to break his back. *Id.* at 848–54. The court held that the officers were not entitled to qualified immunity because though *some* force appeared authorized, the amount of force actually used could have been excessive. *Id.* at 853–54.[7] In *McNew v. Pleasant*, No. 90 C 4825, 1992 WL 162255, at *4 (N.D. Ill. July 6, 1992), the court held that officers were not entitled to qualified immunity when they violently tackled a man who hopped over the turnstyle at a football stadium. These cases, in addition to being non-binding and insufficient to

---

[7] In *Santos* the Ninth Circuit found there were disputed issues of material fact. It also found that "a jury could reasonably conclude that there was little or no need for the application of force against [plaintiff], and that in light of his serious injury, the force used was both substantial and excessive." *Id.* at 853. The Supreme Court has subsequently made plain that once a court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party" the reasonableness of a use of force "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

clearly establish rules regarding constitutional violations,[8] are very different from the case at hand in that those plaintiffs did not reasonably appear to armed or dangerous.

Here the undisputed facts show that Mr. Prevatt was wielding what appeared to be a rifle while walking down the street near an elementary school. When the police arrived, he behaved oddly, dropped the rifle and the two knives, and defiantly turned to walk away from the officers rather than indicate an attempt to comply with their commands to get to the ground. The officers made the decision to use non-deadly force to subdue him. By the time Mr. Prevatt attempted to submit by raising his hands (but still had not gone to the ground), the officers were already upon him.

In sum, this Court finds that it was not clearly established that the amount of force that the officers used was constitutionally excessive. All of the *Graham* factors suggest a justifiable use of non-deadly force in effecting the seizure. The officers, worried about the severity, threat, and flight risks posed by Mr. Prevatt, used non-lethal force to bring him to the ground. The cases Mr. Prevatt relies on do not clearly establish that this use of force was unconstitutional. It is unfortunate that Mr. Prevatt sustained injuries as a result. But it is simply not the case that "no

---

[8] The Eleventh Circuit has declined to interpret a Supreme Court case as holding that "a consensus of cases of persuasive authority would be able to establish law clearly." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

reasonable officer could have believed that [the officers'] actions were legal." *Lee*, 284 F.3d at 1199. No clearly established law put these officers on notice that this amount of force might be excessive under these particular circumstances. So they are entitled to qualified immunity on the federal claims against them.

### III

Mr. Prevatt also sues the City of Gainesville, claiming it should be liable for the officers' constitutional violations. The City seems to argue that it is entitled to summary judgment because (1) no constitutional violation occurred; and (2) a finding of qualified immunity equates to a finding that the Constitution has not been violated.

The second argument is plainly wrong. A constitutional violation may have occurred even if the law was not clearly established. Under *Monell* a municipality may be held liable for the constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The defense of qualified immunity, and the requirement that the law be clearly established to overcome it, is not available to a municipality. *See, e.g.*, *Pearson*, 555 U.S. at 243.

Under § 1983 it is not enough that a city employs someone who acts improperly on the job. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Under this statute municipalities "may be held liable only for the execution of a governmental policy or custom." *Kamensky v. Dean*, 148 F.

App'x 878, 880 (11th Cir. 2005).  But the City has not made arguments in its summary-judgment motion directed at the requirements for municipal liability.

For several reasons, including the interest of conserving judicial resources, this Court declines to decide the constitutionality of the seizure until it is necessary to do so.  Instead, the parties must submit additional briefing on the issue of municipal liability and address whether Mr. Prevatt properly alleged liability under *Monell* or has offered enough evidence for a reasonable jury to hold the City liable on that basis.

### IV

This Court grants summary judgment on the § 1983 individual claims against Officers Kelly and Abbott because they are entitled to qualified immunity.  The § 1983 claim against the City requires additional briefing.  This Court will not rule on the pendant state law claims at this time, and will decline to exercise jurisdiction over them if the constitutional claim against the City fails.

For the reasons stated,

**IT IS ORDERED:**

1. Defendants' Motion for Summary Final Judgment, ECF No. 20, is **GRANTED** in part.

2. Summary judgment is granted as to Counts III and IV.  Counts III and IV are **DISMISSED WITH PREJUDICE**.  This Court does *not*

direct entry of judgment as to the dismissed claims under Federal Rule of Civil Procedure 54(b).

3. This Court reserves a ruling on the rest of Defendants' motion pending submission of additional briefing.

4. No later than 10 days from the date of this order, Defendants must file a supplement to its motion for summary judgment specifically addressing whether Plaintiff has properly alleged in his complaint or offered any evidence demonstrating a basis for municipal liability in Count VI.

5. Plaintiff may respond to Defendant's supplemental filing within 10 days of that filing.

**SO ORDERED on January 12, 2016.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**
